# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| Stephen Belliveau | ) | CASE NO: |
| 12960 Tewksberry Lane | ) | |
| Chardon, Ohio 44024 | ) | |
| | ) | JUDGE |
| And | ) | |
| | ) | |
| Brian Hennis | ) | **CLASS ACTION COMPLAINT** |
| 4145 Pierson Street | ) | |
| Hilliard, Ohio 43026 | ) | |
| | ) | |
| Plaintiffs, on behalf of themselves and all | ) | **JURY DEMAND ENDORSED HEREIN** |
| others similarly situated, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| Volkswagen Group of America, Inc | ) | |
| A New Jersey Corporation, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |
| | ) | |

Now come Plaintiffs, Stephen D. Belliveau and Brian Hennis, by and through the undersigned

counsel, on behalf of themselves and all others similarly situated, and hereby states for their

Complaint:

## I.     FACTUAL ALLEGATIONS

1.  The United States Government, through the Environmental Protection Agency, has passed and

enforced laws designed to protect United States citizens from pollution and in particular,

certain chemicals and agents known to cause disease in humans. Automobile manufacturers

must abide by these US laws and must adhere to EPA rules and regulations.  This case arises

because Stephen D. Belliveau and Brian Hennis (individually "Plaintiff" and collectively

"Plaintiffs") claim that Defendant Volkswagen Group of America ("Volkswagen")

purposefully and intentionally breached the laws of the United States and the rules and regulations of the EPA by selling in the United States vehicles manufactured by its affiliates Volkswagen AG and Audi AG that purposefully evaded federal and state laws.  As stated by Cynthia Giles in the September 18, 2015 Notice of Violation issued to Volkswagen ("NOV"), Assistant Administrator for the Office of Enforcement and Compliance Assurance at the EPA: "Using a defeat device in cars to evade clean air standards is illegal and a threat to public health."  This is precisely what Volkswagen did in marketing and selling Volkswagen and Audi diesels between 2009 and 2015.

2.  As detailed in the NOV, attached and incorporated as **Exhibit 1**, sophisticated software in the Volkswagen and Audi diesel vehicles sold by Defendant Volkswagen in the United States detects when the vehicle is undergoing official emissions testing and turns full emissions controls on only during the test. At all other times that the vehicle is used, the emissions controls are suppressed, resulting in cars that meet emissions standards in the laboratory or state testing station, but during normal operation emit nitrogen oxides (NOx) at up to 40 times the standard allowed by United States laws and regulations. The software produced and used by Volkswagen is a "defeat device" as defined by the Clean Air Act.

3.  NOx pollution contributes to nitrogen dioxide, ground-level ozone, and fine particulate matter.  Exposure to these pollutants has been linked with serious health dangers, including asthma attacks and other respiratory illnesses serious enough to result in hospitalization, medication, and chronic health conditions.  Ozone and particulate matter exposure have been associated with premature death due to respiratory related or cardiovascular relate effects. Particularly susceptible to all of these dangers are children, the elderly, and individuals with pre-existing respiratory illnesses.

2

4. The Clean Air Act has strict emissions standards for vehicles and it requires vehicle manufacturers to certify to the EPA that the vehicles sold in the United States meet applicable federal emissions standards to control air pollution. Every vehicle sold in the United States must be covered by an EPA issued certificate of conformity. Under federal law, cars equipped with defeat devices, which reduce the effectiveness of the emissions control system during normal driving conditions, cannot be certified. By manufacturing and selling cars with defeat devices that allowed for higher levels of emissions that were certified to EPA, Volkswagen violated the Clean Air Act, defrauded its customers, and engaged in unfair competition under state and federal law.

5. According the EPA NOV, Volkswagen installed its "defeat device" in at least the following diesel models of its vehicles (the "Affected Vehicles"): MY 2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-2015 VW Passat; and MY 2009-2015 Audi A3. Discovery may reveal that additional vehicle models and model years are properly included as Affected Vehicles.

6. Volkswagen expressly marketed and advertised its CleanDiesel models as extraordinarily clean, EPA certified in all 50 states, highly efficient, and powerful. For example, the following promotional material, including website advertisements, print advertisements, and commercials were used between 2010 and 2015, and similar materials have been used across the spectrum of models using the CleanDiesel engine system:



[Screenshot from video advertisement in which a woman holds pristine white scarf up to Jetta TDI CleanDiesel's tailpipe while the car is operating, and removes the scarf unsullied by emissions, reinforcing the misrepresentation that the Affected Vehicles comply with EPA emissions standards]







Combining legendary performance and fuel economy, the TDI Clean Diesel is our least thirsty engine yet, delivering up to 1,235 kilometres (highway) per tank on models like the Touareg and Passat.*

**Come test drive one today.**



# Burn rubber, not money.

The all-new 2010 Golf TDI Clean Diesel offers fuel efficiency,* power, and performance. Or, in other words, it's a lean, mean, cleaner-burning machine. The Volkswagen TDI engine is cleaner than conventional diesels, emitting as much as 95% fewer sooty emissions than previous diesel engines, as well as a reduction in oxides of nitrogen and sulfur. It's powerful, with the kind of street-savvy torque that brings a smile to every stoplight. It's efficient, using a turbocharger and smart exhaust design to use fuel more effectively. So much so, in fact, that Volkswagen was the first automaker to make clean diesel cars that are certified in all 50 states. And best of all, it will help save you money, with an out-of-this-world EPA-estimated mileage of 30 city/42 highway mpg (automatic)* and over 594 miles on a single tank of fuel.**

If efficiency and savings weren't enough, the Golf TDI model also gives you premium features like the multi-function leather steering wheel, the touchscreen Premium VIII radio with a Media Device Interface (MDI) and iPod® cable, SIRIUS® Satellite Radio, a 6-speed manual transmission, fog lights, and the optional navigation package with touchscreen navigation to efficiently find your way to the bank.





"Good, clean fun" takes on a whole new meaning.



[Screenshot from an Audi ad depicting an Audi A3 diesel and Audi Q7 diesel "herding" barrels of oil back onto a cargo ship, reinforcing the misrepresentation that the Affected Vehicles are efficient, environmentally friendly, and powerful.]

7.  Volkswagen has charged a substantial premium for the Affected Vehicles, ironically marketed by Volkswagen as "CleanDiesel." For example, for the 2015 Volkswagen Jetta, the base S model has a starting MSRP of $18,780. The base TDI S CleanDiesel, however, has a starting MSRP of $21,640, a price premium of $2,860. The CleanDiesel premium for the highest trim Jetta model is substantially higher. The highest level gas Jetta SE has a starting MSRP of $20,095, while the CleanDiesel TDI SEL MSRP is $26,410, a staggering $6,315 premium.

8.  These premiums occur across all of the vehicles in which Volkswagen installed its "defeat device" for emissions testing;  in essence, consumers pay extra for a vehicle that can only comply with EPA regulations when the "defeat device" is engaged. The table below sets forth the price premium for each base, mid-level and top-line trim for each affected model:

**CleanDiesel Price Premiums**

| Model | Base | Mid-level | Top-line |
|-------|------|-----------|----------|
| *VW Jetta* | $2,860 | $4,300 | $6,315 |
| *VW Beetle* | $4,635 | n/a | $2,640 |
| *VW Golf* | $2,950 | $1,000 | $1,000 |
| *VW Passat* | $5,755 | $4,750 | $6,855 |
| *Audi A3* | $2,805 | $3,095 | $2,925 |

9. Volkswagen has been ordered by the EPA to recall the Affected Vehicles, estimated to be a total of 400,000 or more within the United States and potentially 11 million worldwide, and repair them so that they comply with EPA emissions requirements at all times during normal operation. However, Volkswagen will not be able to make the Affected Vehicles comply with emissions standards without substantially degrading their performance characteristics, including their horsepower and their efficiency. As a result, even if Volkswagen is able to make Class members' Affected Vehicles EPA compliant, Class Members will nonetheless suffer actual harm and damages because their vehicles will no longer perform as they did when purchased or leased and as advertised. This will necessarily result in a diminution in value of every Affected Vehicle and it will cause owners of Affected Vehicles to pay more for fuel while using their affected vehicles.

10. On September 20, 2015, Volkswagen admitted that the EPA allegations were true. It admitted using a "defeat device" in the Affected Vehicles. Its CEO Martin Winterkorn stated: "I personally am deeply sorry that we have broken the trust of our customers and the public."

11. As a result of Volkswagen's unfair, deceptive, and/or fraudulent business practices, and its failure to disclose that under normal operating conditions the Affected Vehicles emit 40 times the allowed levels, owners and/or lessees of the Affected Vehicles have suffered losses in money

and/or property. Had Plaintiffs and Class members known of the "defeat device" at the time they purchased or leased their Affected Vehicles, they would not have purchased or leased those vehicles, or would have paid substantially less for the vehicles than they did. Moreover, when and if Volkswagen recalls the Affected Vehicles and degrades the CleanDiesel engine performance in order to make the Affected Vehicles compliant with EPA standards, Plaintiffs and Class members will experience further diminution in value in the Affected Vehicle.

12. Plaintiffs bring this action individually and on behalf of all other current and former owners or lessees of Affected Vehicles.  Plaintiffs seek damages, injunctive relief, and equitable relief for the conduct of Volkswagen related to the "defeat device," as alleged in this Complaint.

## II.     JURISDICTION

13. This Honorable Court has subject matter jurisdiction over this action pursuant to 28 USC 1331, which confers upon the Court original jurisdiction over all civil actions arising under the laws of the United States.  This Honorable Court has jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 USC 1332(d), because the proposed Class consists of 100 or more members;  the amount in controversy exceeds $5,000,000, exclusive of costs and interest;  and minimal diversity exists.  This Honorable Court also has supplemental jurisdiction over the state law claims pursuant to 28 USC 1367.

## III.    VENUE

14. Venue is proper in this District under 28 USC 1391 because a substantial part of the events or omissions giving rise to the Plaintiffs' claims occurred in this District.  Plaintiffs Stephen D. Belliveau and  Brian Hennis purchased their Affected Vehicles within this District.

## IV.    PARTIES

### a.  PLAINTIFFS

9

15. Plaintiff Stephen D. Belliveau is an individual residing in Chardon, Ohio.  In August 2015, Mr. Belliveau purchased a 2015 Volkswagen Jetta TDI CleanDiesel from Classic Volkswagen, an authorized dealer in Mentor, Ohio.  Mr. Belliveau purchased, and still owns this vehicle.  Unknown to Mr. Belliveau was that he purchased the vehicle with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emits 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff Belliveau out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about the "defeat device," and used it purposefully, but did not disclose the device's presence and its effects to Mr. Belliveau.  Mr. Belliveau purchased his Jetta on the reasonable, but mistaken, belief that it complied with United States emissions standards, was properly EPA certified, and would retain all of its operating characteristics throughout its useful life.

16. Plaintiff Brian Hennis is an individual residing in Hilliard, Ohio.  In May 2014, Mr. Hennis purchased a 2014 Passat TDI CleanDiesel from Ganley Volkswagen, an authorized dealer in Cuyahoga County, Ohio.  Mr. Hennis purchased, and still owns this vehicle.  Unknown to Mr. Hennis was that he purchased the vehicle with an emissions control "defeat device" which caused the vehicle to get an undue EPA certification and pass emissions tests, but at all other times emits 40 times the allowed level of pollutants, including NOx.  The use of the "defeat device" by Volkswagen has caused Plaintiff Hennis out-of-pocket loss, future attempted repairs, and diminished value of his vehicle.  Volkswagen knew about the "defeat device," and used it purposefully, but did not disclose the device's presence and its effects to Mr. Hennis.  Mr. Hennis purchased his Passat on the reasonable, but mistaken, belief that it complied with United States emissions standards, was properly EPA certified, and would

10

retain all of its operating characteristics throughout its useful life.

**b. DEFENDANT**

17. Volkswagen Group of America, Inc., is a corporation doing business in all 50 states and the District of Columbia, and is organized under the laws of the State of New Jersey, with its principal place of business located at 2200 Ferdinand Porsche Drive, Herndon, Virginia 20171.  At all times relevant to this action, Volkswagen manufactured, distributed, sold, leased, and warranted the Affected Vehicles under the Volkswagen and Audi brand names in Ohio.  Volkswagen and/or its agents designed, manufactured, and installed the CleanDiesel engine systems in the Affected Vehicles, which included the "defeat device."  Volkswagen also developed and disseminated the owner's manuals and warranty booklets, advertisements, and other promotional materials relating to the Affected Vehicles.

**V.    TOLLING OF THE STATUTE OF LIMITATIONS**

**a. Discovery Rule Tolling**

18. Plaintiffs and Class Members had no reason to know or even suspect that Volkswagen used a "defeat device" on its CleanDiesel engine systems to circumvent federal law.  It was only because of action from the federal Environmental Protection Agency and the California Air Resources Board that uncovered Volkswagen's deception.  The *Los Angeles Times* reported on September 18, 2015 that the California Air Resources Board used a specialized dynamometer in a laboratory, open-road testing using portable equipment, and the use of other special testing devised by the Board to uncover Volkswagen's scheme and to detect the illicit "defeat device" software on the engine's electronic control module.  Setting aside the fact that the average consumer lacks the equipment or technical skill to perform and interpret these tests, the Plaintiffs and Class Members had no reason to doubt Volkswagen's assertions

about the Affected Vehicles.  All signs point to an intentional effort to deceive or circumvent emissions certification tests.  In simplest terms, Volkswagen sought to hide its behaviors from regulators and consumers.  This is a classic, paradigmatic case for tolling.

19. Within the time period of any applicable statutes of limitation, Plaintiffs and members of the proposed classes could not have discovered through the exercise of reasonable diligence that Volkswagen was concealing the conduct complained of herein and misrepresented Volkswagen's true position with respect to the emission qualities of its vehicles.

20. Plaintiffs and the other Class Members did not discover, and did not know of facts that would have caused a reasonable person to suspect that Volkswagen did not report information within its knowledge to federal and state authorities, its dealerships, or consumers.  No reasonable and diligent investigation could have disclosed that Volkswagen had information it its possession about the existence of its sophisticated "defeat device."  The existence of Volkswagen's scheme was uncovered only days before the filing of this instant action.  No investigation by Plaintiffs or any other Class Members could have revealed that Volkswagen apparently valued profits over compliance with federal and state law, or the trust that Plaintiffs and Class members placed in Volkswagen's representations.  Upon information and belief, Volkswagen actively discouraged its agents from raising or disclosing the truth of the CleanDiesel system, its unlawful "defeat device," and the true amount of emissions produced by the Affected Vehicles.

**b. Fraudulent Concealment Tolling**

21. All applicable statutes of limitation have also been tolled by Volkswagen's knowing and active fraudulent concealment and denial of the facts alleged herein throughout the time period relevant to this action.

22. Instead of disclosing its emissions scheme, the quality and quantity of emissions from the subject vehicles that were far worse than represented, and its disregard for federal and state law, Volkswagen employed a "defeat device" and falsely represented that its vehicles complied with federal and state emissions standards, and that it was a reputable manufacturer whose representations could be trusted.  The truth of the matter was only recently unearthed by a government investigation.

**c.  Estoppel**

23. Volkswagen was under a continuous duty to disclose to Plaintiffs and the other Class Members the true character, quality, and nature of emissions from the vehicles at issue, and of those vehicles' emissions systems, and of the compliance of those systems with applicable federal and state law.

24. Volkswagen knowingly, affirmatively, and actively concealed the true nature, quality, and character of the emissions systems, and the emissions of the vehicles at issue.

25. Volkswagen was also under a continuous duty to disclose to Plaintiffs and Class members that it had engaged in the scheme complained of herein to evade federal and state emissions and clean air standards, and that it systematically devalued compliance with, and deliberately flouted, federal and state law regulating vehicle emissions and clean air.

26. Based on the foregoing, Volkswagen is estopped from relying on any statutes of limitations in defense of this action.

**VI.  CLASS ALLEGATIONS**

27. Plaintiffs incorporate by reference the foregoing allegations as if fully stated herein.

28. This action seeks Certification of an Ohio only class based upon fraudulent concealment,

breach of contract, and violations of the Ohio Consumer Sales Practices Act.  All Class

Members have been subjected to the same improper pattern and practice engaged in by

Volkswagen, to wit the marketing and sale of vehicles with the CleanDiesel engine system

and the "defeat device" designed to create the illusion of compliance with EPA regulations.

29. Plaintiffs brings this action on behalf of themselves and as a class action, pursuant to

the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on

behalf of the following Class:

**All persons or entities in the state of Ohio who are current or former owners and/or**

**lessees of an "Affected Vehicle." Affected Vehicles include, without limitation: MY**

**2009-2015 VW Jetta; MY 2009-2015 VW Beetle; MY 2009-2015 VW Golf; MY 2014-**

**2015 VW Passat; and MY 2009-2015 Audi A3.**

30. Excluded from the Class are individuals who have personal injury claims resulting from the

"defeat device" in the CleanDiesel system. Also excluded from the Class are Volkswagen

and its subsidiaries and affiliates; all persons who make a timely election to be excluded from

the Class; governmental entities; and the judge to whom this case is assigned and his/her

immediate family. Plaintiffs reserve the right to revise the Class definition based upon

information learned through discovery.

31. Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs

can prove the elements of their claims on a class-wide basis using the same evidence as

would be used to prove those elements in individual actions alleging the same claim.

32. This action has been brought and may be properly maintained on behalf of each of the

Classes proposed herein under Federal Rule of Civil Procedure 23.

33. <u>Numerosity.</u> Federal Rule of Civil Procedure 23(a)(1): The members of the Classes are so

numerous and geographically dispersed throughout Ohio that individual joinder of all Class members is impracticable. While Plaintiffs are informed and believe that there are not less than 400,000 Affected Vehicles in the United States, the precise number of Class members in Ohio is unknown to Plaintiffs, but more likely than not number in the tens of thousands, and may be ascertained from Volkswagen's books and records, as well as publication to owners who have relocated to and/or reside in Ohio with Affected Vehicles. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

34. Commonality and Predominance: Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3): This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

    a) Whether Volkswagen engaged in the conduct alleged herein;

    b) Whether Volkswagen designed, advertised, marketed, distributed, leased, sold, or otherwise placed Affected Vehicles into the stream of commerce in the State of Ohio and the United States;

    c) Whether the CleanDiesel engine system in the Affected Vehicles contains a defect in that it does not comply with U.S. EPA requirements;

    d) Whether the CleanDiesel engine systems in Affected Vehicles can be made to comply with EPA standards without substantially degrading the performance and/or efficiency of the Affected Vehicles;

    e) Whether Volkswagen knew about the "defeat device" and, if so, how

long Volkswagen has known;

f)  Whether Volkswagen designed, manufactured, marketed, and distributed Affected Vehicles with a "defeat device";

g)  Whether Volkswagen's conduct violates consumer protection statutes, warranty laws, and other laws as asserted herein;

h)  Whether Plaintiffs and the other Class members overpaid for their Affected Vehicles;

i)  Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

j)  Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

35. <u>Typicality:</u> Federal Rule of Civil Procedure 23(a)(3): Plaintiffs' claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through Volkswagen's wrongful conduct as described above.

36. <u>Adequacy:</u> Federal Rule of Civil Procedure 23(a)(4): Plaintiffs are adequate Class representative because their interests do not conflict with the interests of the other members of the Classes they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Classes' interests will be fairly and adequately protected by Plaintiffs and their counsel.

37. <u>Declaratory and Injunctive Relief:</u> Federal Rule of Civil Procedure 23(b)(2): Volkswagen has acted or refused to act on grounds generally applicable to Plaintiffs and the other

members of the Classes, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

38. <u>Superiority:</u> Federal Rule of Civil Procedure 23(b)(3): A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiffs and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Volkswagen, so it would be impracticable for the members of the Classes to individually seek redress for Volkswagen's wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VII. VIOLATIONS ALLEGED ON BEHALF OF THE OHIO CLASS

### a. COUNT I- FRAUDULENT CONCEALMENT- OHIO STATE LAW

39. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

40. Plaintiffs bring this Count on behalf of themselves and all other in the Class.

41. Volkswagen intentionally concealed and/or acted with reckless disregard for information that was and is highly relevant to the decision Plaintiffs and Class members made to purchase or lease an Affected Vehicle, to wit;  that the CleanDiesel engine systems featured an unlawful "defeat device" installed for the purposes of securing the illusion of EPA compliance.

42. Volkswagen further affirmatively misrepresented to Plaintiffs and Class Members that the Affected Vehicles it was selling were new, had no significant defects, complied with EPA regulations and would perform and operate properly when driven in normal usage and throughout the useful life of the vehicle, through advertising and other forms of communication, including standard and uniform material provided with each car.

43. Volkswagen knew or should have known that these representations were false when made.

44. Because of the CleanDiesel engine system and the "defeat device", the Affected Vehicles purchased or leased by Plaintiffs and the other Class members were and are defective, noncompliant with applicable EPA regulations, unsafe, unreliable, and less valuable.

45. Volkswagen had a duty to disclose that these Affected Vehicles were defective, unsafe, non-EPA compliant, unreliable, and less valuable because the CleanDiesel engine system and its "defeat device" manipulated the emissions functions of the Affected Vehicles, because Plaintiffs and the other Class members relied on Volkswagen's material misrepresentations that the Affected Vehicles they were purchasing were safe, environmentally friendly, clean, efficient, free from defects, and capable of performing and operating properly when driven in normal usage through the useful life of the vehicle.

46. The aforementioned concealment was material because if it had been disclosed, Plaintiffs and the other Class members would not have bought or leased the Affected Vehicles, or would not have bought or leased those Affected Vehicles at the inflated prices they paid.

47. The aforementioned representations were material because they were facts that would typically be relied on by a person purchasing or leasing a new motor vehicle. Volkswagen knew or recklessly disregarded that its representations were false because it knew that it had to use the "defeat device" in order for Affected Vehicles to pass EPA emissions

requirements and to create the illusion that formed the basis for the aforementioned representations.  Volkswagen made false representations of material facts in order to drive sales of vehicles at the inflated prices at which they were sold.

48. Plaintiff and the other Class members relied on Volkswagen's reputation – along with Volkswagen's misrepresentations about the nature of the CleanDiesel engine system and Volkswagen's affirmative assurance that its Affected Vehicles were safe and reliable, and other similar false statements – in purchasing or leasing Volkswagen's Affected Vehicles.

49. But for their reliance, Plaintiffs and the other Class members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase or lease and/or the diminished value of their Affected Vehicles.

50. Volkswagen's conduct was knowing, intentional, with malice, demonstrated a complete lack of care, and was in reckless disregard for the rights of Plaintiffs and the other Class members. Plaintiffs and the other Class members are therefore entitled to an award of punitive damages.

**b.  COUNT II- BREACH OF CONTRACT- OHIO STATE LAW**

51. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

52. Plaintiffs bring this Count on behalf of themselves and all others in the Class.

53. Volkswagen made a variety of misrepresentations and omissions that caused Plaintiffs and the other Class members to purchase or lease the affected vehicles, including but not limited to the true nature of the CleanDiesel engine system, the presence of the "defeat device," the true amount of emissions produced by the Affected Vehicles, and that the Affected Vehicles would perform and operate properly when driven in normal usage and throughout the useful life of

the vehicle.  Absent those misrepresentations and omissions, Plaintiffs and the other Class Members would not have purchased or leased these Affected Vehicles, would not have purchased or leased these Affected Vehicles at the inflated prices they paid, and/or would have purchased or leased less expensive alternative vehicles that did not contain the CleanDiesel engine system and which were not marketed as including such a system. Accordingly, Plaintiff and the other Class members overpaid for their Affected Vehicles and did not receive the benefit of their bargain.

54. Each and every sale or lease of an Affected Vehicle constitutes a contract between Volkswagen and the purchaser or lessee. Volkswagen breached these contracts by selling or leasing Plaintiff and the other Class members defective Affected Vehicles and by misrepresenting or failing to disclose the existence of the CleanDiesel engine system's defect and/or defective design and "defeat device", including information known to Volkswagen. Each Affected Vehicle, without the use of its "defeat device," is non-EPA-compliant, and thus less valuable, than comparable vehicles not equipped with a CleanDiesel engine system.

55. As a direct and proximate result of Volkswagen's breach of contract, Plaintiffs and the Class have been damaged in an amount to be proven at trial, which shall include, but is not limited to, all compensatory damages, incidental and consequential damages, and other damages allowed by law.

c. **COUNT III- VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT ('OCSPA"), OHIO REVISED CODE SECTION 1345.01 *ET SEQ.***

56. Plaintiffs incorporate by reference all preceding allegations as though fully set forth herein.

57. Plaintiffs bring this Count on behalf of themselves and all other in the Class.

58. Plaintiffs and the Class members are "consumers" as defined by the Ohio Consumer Sales

Practices Act, Ohio Revised Code 1345.01. ("OCSPA")

59. Volkswagen is a "supplier" as defined by the OCSPA.

60. Plaintiffs' and Class Members' purchases or leases of Affected Vehicles were "consumer transactions" as defined by the OCSPA.

61. By failing to disclose and actively concealing that the CleanDiesel engine systems were not EPA-compliant and used a "defeat device" in the Affected Vehicles in order to create the illusion of compliance, Volkswagen engaged in deceptive business practices prohibited by the OCSPA, including but not limited to:

   a. representing that Affected Vehicles have characteristics, uses, benefits, and qualities which they do not have;

   b. representing that Affected Vehicles are of a particular standard, quality, and grade when they are not;

   c. advertising Affected Vehicles with the intent not to sell them as advertised, and

   d. engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer.

62. As alleged above, Volkswagen made numerous material statements about the benefits and characteristics of the CleanDiesel engine system that were either false or misleading. Each of these statements contributed to the deceptive context of Volkswagen's unlawful advertising and representations as a whole.

63. Volkswagen knew that the CleanDiesel engine system in the Affected Vehicles were defectively designed or manufactured with the presence of the "defeat device," did not comply with EPA regulations and the Clean Air Act, and were not suitable for their intended use. Volkswagen nevertheless failed to warn Plaintiffs and Class Members about these

21

defects despite having a duty to do so.

64. Volkswagen owed Plaintiffs a duty to disclose the defective nature of the CleanDiesel

engine system and the "defeat device" in the Affected Vehicles, because Volkswagen:

    a. Possessed exclusive knowledge of the "defeat device" and/or any other defects

       rendering the Affected Vehicles noncompliant;

    b. Intentionally concealed the defects associated with the CleanDiesel system

       through the design of the "defeat device," the deceptive marketing campaign, and

       any recall program that it designed to hide the defects in the CleanDiesel engine

       system and the "defeat device;"  and/or

    c. Made incomplete representations about the characteristics and performance of

       the CleanDiesel engine system generally, while purposefully withholding

       material facts from Plaintiffs and class members that contradicted those

       representations, including but not limited to information about the "defeat

       device."

65. Volkswagen's unfair or deceptive acts or practices were likely to, and did in fact, deceive

reasonable consumers, including Plaintiffs, about the true performance and characteristics

of the CleanDiesel engine system.

66. The Ohio Attorney General has made available for public inspection prior state court

decisions which have held that the acts and omissions of Volkswagen in this Complaint,

including, but not limited to, the failure to honor both implied warranties and express

warranties, the making and distribution of false, deceptive, and/or misleading

representations, and the concealment and/or non-disclosure of a dangerous defect, constitute

deceptive sales practices in violation of the OCSPA. These cases include, but are not limited

to, the following:

    a.  *Mason v. Mercedes Benz USA, LLC* (OPIF #10002382);

    b.  *State ex rel. Betty D. Montgomery v. Volkswagen Motor Co.* (OPIF #10002123);

    c.  *State ex rel. Betty D. Montgomery v. Bridgestone/Firestone, Inc.* (OPIF #10002025);

    d.  *Bellinger v. Hewlett-Packard Co.*, No. 20744, 2002 Ohio App. LEXIS 1573 (Ohio Ct. App. Apr. 10, 2002) (OPIF #10002077);

    e.  *Borror v. MarineMax of Ohio*, No. OT-06-010, 2007 Ohio App. LEXIS 525 (Ohio Ct. App. Feb. 9, 2007) (OPIF #10002388);

    f.  *State ex rel. Jim Petro v. Craftmatic Organization, Inc*. (OPIF #10002347);

    g.  *Mark J. Craw Volkswagen, et al. v. Joseph Airport Toyota, Inc*. (OPIF #10001586);

    h.  *State ex rel. William J. Brown v. Harold Lyons, et al*. (OPIF #10000304);

    i.  *Brinkman v. Mazda Motor of America, Inc*. (OPIF #10001427);

    j.  *Khouri v. Don Lewis* (OPIF #100001995);

    k.  *Mosley v. Performance Mitsubishi aka Automanage* (OPIF #10001326);

    l.  *Walls v. Harry Williams dba Butch's Auto Sales* (OPIF #10001524); and

    m.  *Brown v. Spears* (OPIF #10000403).

67. As a result of its violations of the OCSPA, as detailed above, Volkswagen caused actual damage to Plaintiffs and Class Members and, if not stopped, will continue to harm Plaintiffs and Class Members. Plaintiffs and Class Members currently own or lease, or has owned or leased, an Affected Vehicle that is defective. Defects associated with the CleanDiesel engine system have caused the value of Affected Vehicles to decrease.

68. Plaintiff and the Class Members sustained damages as a result of Volkswagen's unlawful acts and are, therefore, entitled to damages and other relief as provided under the OCSPA.

69. Plaintiff also seeks court costs and attorneys' fees as a result of Volkswagen's violations of the OCSPA as provided in Ohio Rev. Code § 1345.09.

## VIII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of Class Members, respectfully request that the Court enter judgment in their favor and against Volkswagen, as follows:

i)      Certification of the proposed Ohio-only Class;

ii)     Appointment of Plaintiffs' counsel as Class Counsel;

iii)    An order appointing Plaintiffs as lawful and adequate representatives of the Class;

iv)     An order temporarily and permanently enjoining Volkswagen from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

v)      Injunctive relief in the form of a recall or free replacement program;

vi)     Plaintiffs' and Class Members actual damages in excess of $75,000.00

vii)    Costs, restitution, damages, including punitive damages, and disgorgement in an amount to be determined at trial;

viii)   An order requiring Volkswagen to pay both pre- and post-judgment interest on any amounts awarded;

ix)     Declaratory judgment that Volkswagen's practices that form the subject matter of this complaint are unfair, deceptive, and/or unconscionable;

x)      Injunctive relief enjoining Defendants from continuing their unfair, deceptive, unconscionable, and illegal practices to all future customers;

xi)     An award of costs and attorneys' fees; and

xii)     Such other or further relief as may be appropriate.

## IX.    DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a jury trial for all claims so triable.

Respectfully submitted,

   /s/ Thomas J. Connick
Thomas J. Connick (0070527)
David Mullen (0089053)
Connick Law LLC
25550 Chagrin Boulevard, Suite 101
Beachwood, OH 44122
PH: 216-364-0512
FX: 216-609-3446
tconnick@connicklawllc.com
dmullen@connicklawllc.com

   /s/ Edward W. Cochran
Edward W. Cochran (0032942)
20030 Marchmont Road
Shaker Heights, Ohio 44122
PH: 216-751-5546
Email: edwardcochran@wowway.com

*Attorneys for Plaintiffs*